2020-23-19, Mr. Bagdasarian. Good morning. Good morning, Your Honor. It's Mark Bagdasarian on behalf of Appellant Sirius XM. I may please the Court. Your Honor, the Board committed multiple legal errors on several fronts in this case. That legal error begins with the Board's failure to consider the state of the art that was clearly presented in the petition, which included prior art and, in fact, admissions from the 289 patent that clearly showed that the satellite transmission limitations were in the prior art. In fact, the first page of our petition says, and this is at Appendix 94, each independent claim requires sending or receiving data over two communication channels in order to obtain time and space diversity, which are well-known techniques for reducing channel fading. Those are the satellite transmission limitations. Through our petition, we showed not only through the admissions in the state of the art section of the challenge patent itself, but through other references as well, including the E reference. We did that in our petition. In fact, at the institution phase, the Board recognized that, in fact, we did that and explicitly said, and this is at Appendix 472 and 473, quote, Dr. Lyon also relies on the teachings of Yi to show that implementing code diversity in a transmission architecture that achieves space and time diversity was within the level of ordinary skill in the art and would have been constructed without undue experimentation. But what the Board did here when it got to our reply, it said our reply was untimely, and I'll address that in a moment. But it didn't go back and look at the petition and the state of the art and background that was presented in the petition, and that clearly violates this Court's precedent in connection with Randall, Arioso, and Phillips. But most notably, another error by the Board here was not following this Court's guidance in Erickson, which we respectfully submit is not only on all fours with the circumstances here, but it's actually an easier case than the Erickson case was. And the reason for that, Your Honor, one of the biggest debates that we've seen from that briefing, from that oral argument, was whether the petition, which was based on admissions in the challenge patent and elsewhere, whether Erickson had to tweak that argument and could extend that argument from the argument made in the petition. Here, we don't have that situation. We have the identical arguments being made in the petition and being made in our reply brief. There was no difference. And the reason you know that is on pages 17 to 20 of the blue brief, we presented a table for this Court's reference, and it shows each of these satellite transmission limitations were clearly disclosed and argued in our petition. You don't need to go elsewhere. We did the same thing for the Board below. What the Board did was say- What is the prior art that disclosed this? I'm sorry, I didn't hear. What is the prior art that disclosed this? Okay, the prior art that disclosed this is on multiple fronts, Your Honor. One, the admissions in the 289 patent itself. The 289 patent, as we presented in the petition and in the briefing to this Court, has a section calling state of the art. And it explicitly references Figure 7. Figure 7 alone and the corresponding description that we identified in our petition shows each of the satellite transmission limitations there. So that's one significant. Those are the admissions. Number two, there was the yee reference that we referenced in our petition and presented to this Court. That was what the Board relied on at the institution phase to show not only are the satellite transmission limitations there, they are used in combination with the code diversity scheme that Fraunhofer claims is the inventive aspect here. That's the second point. The third point of prior art that was disclosed in the petition, and this is undisputed, is the Scalar reference. And the Scalar reference talks about the Reed-Solomon and the Viterbi decoders. Again, those are technically not part of the satellite transmission limitations, but again, they're all in there. But, Your Honor, I think that answers your question. That was all in the petition and we summarized that not only for this Court but for the Board. What the Board said is, well, once Campanella goes away, it is necessarily new. Well, we think that is legal error because that actually flies in the face of Erickson because Erickson had the same situation where the Reed reference fell out as one of the enumerated references and ultimately the Board said, well, we don't have to do any more. This Court's precedent requires the Board to do more. It requires it to do more in connection with Randall Arioso and those lines of cases. It also is required to do more. Where did you argue in the petition that this limitation was disclosed in general knowledge in the prior art? Actually, the starting point, Your Honor, is the first page of the petition at Appendix 94 where we said each independent claim requires sending or receiving data over two communication channels in order to obtain time and space diversity, which are well-known techniques for reducing channel fate. That's the starting point for it. I'll give you a chance to turn to Appendix 94. Mr. McNamara, the place you just referenced is just a general introduction to what we are doing. I don't find any place in your petition where you specifically set forth as a ground for unpatenability over Chen alone, or Chen with general knowledge. Well, Your Honor, I'm going to address both questions. The petition and the background presented in the petition regarding the state-of-the-art necessarily applies to all the grounds there. It frames the grounds that are ultimately being argued. Is there something more specific with respect to general knowledge disclosing this or Chen alone disclosing it? It's the state-of-the-art that discloses the satellite transmission limitations, which when used in combination with Chen. Where did you argue that in the petition? We start at 94, and if you go to Appendix 100 to 101, that's when we get into, for example, the admissions from the 289 patent themselves. I'll give you a moment to get to Appendix 100. Go ahead. At Appendix 100 and 101, you'll see there's reference to and a discussion of Figure 7 as compared to Figure 2. Figure 7 is what the 289 patent admits is in the prior art. They describe that as the state-of-the-art. That's where we presented and argued that point. That was ultimately cumulative to Campanella here. Those are very specific disclosures from the 289 patent itself. That's one example. If you go to Appendix 117, again, there is discussion of the E reference that I referred to earlier, which is what the board relied upon in their institution decision to basically say the satellite transmission limitations in combination with code diversity, we satisfied the threshold to grant institution. The legal error here is the board not going back and saying, well, once Campanella goes out, their job is over. We believe this course president says you need to do more. Erickson, as I mentioned before, isn't all for us here, but it's actually an easier case. Erickson actually had to tweak some of the arguments they made when the READ reference fell out. We're not tweaking an argument. We're presenting the same argument that was made in the petition. We summarized those arguments in the table between pages 17 and 20 of our opening brief. There's nothing new here. One of the points that the board had raised was the Phillips v. Google case and said, well, this is necessarily a new ground. We respectfully believe the board misread the Phillips v. Google case, which involved a situation where the board, on its own accord, came up with its own ground for institution. That's not the situation here. We have an already instituted ground, and the analogy I can give to this court is we have A plus B plus state of the art, and that's an obviousness ground. If after institution, A goes away, but B plus the state of the art still renders the challenge claims obvious, well, then there's nothing new there. Respectfully, I believe we did argue that. I think the state of the art, the admissions in the 289 patent, coupled with the disclosure that we made certainly did make that argument. Your Honor, if I may, I'll reverse the balance of my time for rebuttal. We will serve it for you. Thank you. Good morning, and may it please the court. Did they argue it in the petition? They certainly did not. You can sit down with that petition and look all day long. What they argued in the petition was Chen plus Campanella, among the small comb combinations, which were separately addressed. Chen plus Campanella. And multiple elements in multiple claims, the exclusive place they presented in the petition at all. So when Mr. Bagnustarian says that what they presented was A plus B plus state of the art, and now just B is dropping out, that simply isn't true. What they presented was A plus B. There was no argument presented whatsoever in the petition in terms of what the petition requires, which is an element by element, a careful analysis, identifying and matching specific elements with specific disclosures, whether we're talking about AAPA or Yee or Sklar. Instead, what you have is a petition that relied exclusively on Campanella for multiple elements. And when that turned out to be error, and Campanella was not prior art, Sirius XM was left to scramble and try to find pieces of other bits of references in the petition to try to cobble together something that they could claim demonstrated elements. The problem is that, as you saw, the particular pages that Mr. Bagnustarian pointed to were describing things at a very, very high level. Statements such as, well, the AAPA shows that spatial diversity exists. Well, the elements for which Campanella was relied upon are much more detailed. And when you look at these general references now to what Sirius XM describes as the satellite transmission elements, those are elements K and M and Q, to say that those were somehow identified as such in the petition with respect to other elements or other prior art, it's simply not there at all. And I should say also that the missing claim elements go far beyond just the satellite transmission elements. And you can go and you can see that those elements are listed in some detail, pages 52 and 53 of the Fraunhofer brief. And so we think that the board was correct in rejecting all of the proposed grounds of their discretion, well within their discretion, in declining to allow Sirius XM to fundamentally rewrite its case at the reply stage. And I'll point out it too, this decision of the board can be affirmed on a number of independent grounds. This court has held that the board can properly set aside a reply in the IPR proceeding if it contains any improper new matter. There's no obligation for the board to sift through a reply to try to sort out the good from the bad. Well in this case Sirius XM has admitted in the oral hearing that there were new issues presented in the reply. They admitted that the original petition did not address the 102E interpretation issue. That's at appendix 857. They admitted that Sirius XM did not even attempt to argue that Campanella could claim priority to its provisional application. That was appendix 853. And now in its reply on appeal on the issue of small com and Campanella provisional applications, whether they provided written description support, again Sirius XM concedes that this was not established in the petition. So all of these are new issues that you see in the reply that was presented in the IPR proceedings. But if even one of them were new, even one of them, that would be sufficient to trigger the rule. I want to go to the case law which we think actually proves this point. The Henney-Penney case is one example. Henney-Penney was a case where there was a single obviousness theory presented in the petition, a combination with Kaufman and Iwaguchi. And there was a combination of those two references with certain components, for example, a sensor and a processor from Iwaguchi that got brought into Kaufman. In the reply, the petitioner in that case made a modification and said, well you could take that same combination, that same theory, the same two references, but there's actually also a disclosure in Kaufman of the sensor as well. So you can get the sensor from either of those two places. And the court said that that was not acceptable. Even with the same two references, the same basic theory, that moving the identification of an element from one place to another made it a new issue on the reply, something that should have been presented in the petition, something that could have been presented in the petition but was not. And so that the board was within its discretion to decline to entertain that new theory in the reply. Wasika Finance is a similar case, a reference that was clearly in the petition, it was clearly in the reply, but because the petitioner changed where the element was identified in that piece of prior art, this court found that that was within the reference. And I think the M modal case in particular is a striking example that's very similar to what we have here. That's a case where the reference terra was relied upon in the petition, then relied upon again in the reply IPR proceedings, but a different piece of it with a different spin. And the board found that this came too late. And this court found that declining to entertain that theory was a proper exercise of discretion. And if you look at that opinion, it's interesting. The court made the point, this court made the point that yes, the board might have been able to go and hunt through the petition and look for a piece here in the background section or a mention over here on some other element that you might have been able to try to find bits and pieces and cobble something together. But that's simply not the standard. That's not what we ask the board to do. What was the board allowed to do? Well, they were allowed to go to the section of the IPR petition that addressed the element in question. And if the board goes to the section of the IPR petition that addresses the element in question and doesn't find that subject matter there, well, this court said that was a proper exercise of discretion. If you didn't call it out in the petition, we're not going to hear you say that it was something you could use on reply. The Erickson decision that a counsel mentioned is a very different situation. First of all, it itself described it as a special case because that was a situation where claim construction was started at one place and then partway through the IPR proceedings, both parties and the board decided that the claim construction was wrong and a different construction should be started. The more important distinguishing element of Erickson is this. In Erickson, the petition expressly contemplated that a particular element was disclosed in the Reed reference. This is on page 1380 of Erickson. The petition expressly contemplated the possibility to the extent that interleaving can also be considered encoding packets into blocks, this is also disclosed by Reed. That was the petition. The reply also looked to Reed for that element. The same portion of Reed, the same element. So there was no changing of position from the petition and the reply. All that was added in the reply was additional information about how one of ordinary skill in the art would have understood that disclosure from Reed. So that is a completely different situation from what we have here where between the petition and the reply, SiriusXM is now going to completely different sources to satisfy elements, sources that were not identified as disclosing those elements anywhere in the petition. The other case that SiriusXM relies on is the Lone Star case. And again, that's a non-precedential case. The petition disclosed a single ground with two theories, a combination of two references, but there were two theories within that proposed ground. One of the two theories said if you don't find this element in such and such reference, you could find it in the background understanding of those of ordinary skill. So again, the argument was made express in the petition itself. Contrast that with this case. At no point do you see SiriusXM saying this element is found in Campanella, but if not, as an alternative you could find it over here in a different reference. Nor do they ever say anywhere in the petition that Campanella is somehow a stand-in or representative of all understanding of those of background knowledge of ordinary skill. They simply don't make that argument at all. The focus was on Campanella and Campanella alone to satisfy those elements. I don't know if the court has any questions about the provisional application issues of the statutory interpretation issue on 102E. Again, neither of those were addressed in the petition. We think the MPEP interpretation that has existed for decades is sound. I guess I'll just conclude with, if there are no other questions, just with a policy point, which is this. If what SiriusXM is saying is the rule, should in fact be endorsed by this court, it will fundamentally change IPR practice. Why? Because what you're going to have is then an extraordinary incentive for petitioners when they present their petition to put in a library. Put in reference after reference after reference. Just jam it all into the background section of your petition. This would be SiriusXM's argument. Can you imagine what that would do? It would essentially mean that any time as a petitioner you go in and you find out that you're missing an element or two, well, on reply, you just go digging through your library and say, well, you can find it here or there or there. The reply would become the main act. The petition would be the dress rehearsal. If you can imagine the impact that would have on an already significantly overburdened agency as they're trying to deal with these IPR petitions. It's just contrary to the entire point of IPR proceedings, to have a streamlined, focused proceeding that is defined by the petition. And you see that again and again in the decisions of this court. We'd ask that you follow those decisions and affirm the court's decision. Thank you, counsel. Thank you, Your Honor. Just a couple of points. Starting with Erickson and the circumstances in Erickson. We don't believe Erickson could have turned out the way it did. Because counsel's argument is effectively, if your state-of-the-art is not presented in your element-by-element analysis, and, for example, claim charts at the end of the petition, well, that necessarily means you did not argue the point. We fundamentally disagree with that point. We don't think that's the situation in Erickson. We believe this court's case law requires the board to consider the state-of-the-art, in particular, admissions made by the patentee in the very challenged patent. We have that exact situation here. And by way of example, and we've laid it out in our table, figure seven alone, as we presented in the petition, shows each one of the satellite transmission limitations. When counsel stands before you and says, well, no, they did not present that to you, the portion that he can only be referring to is at the end of the petition on the element-by-element analysis. He completely ignores that the state-of-the-art, as presented in the front of the petition, necessarily showed that. And, in fact, as I mentioned before, the board specifically relied on that state-of-the-art as part of the institution. And then, ultimately, when we got into the proceedings, ignored that very finding that it found at the institution phase. So the board's very decision recognizes that the state-of-the-art that we present in the petition included argument about the satellite transmission limitations. By the board's very actions, you cannot conclude that we did not argue that. Otherwise, the board institution decision would not have made the reference to ye that I talked about that was necessarily informed by figure seven here in the patent. And in the Erickson situation, it wasn't presented in the element-by-element analysis. There were changed circumstances there. There was a claim construction that changed it. Now, Reed, which was one of the two grounds of the enumerator reference, fell out. So what came in to fill in the gap there? Well, it was the cumulative evidence presented in the petition. We have that same exact situation here. Campanella fell out, and we disagree for the reasons we've articulated in our briefing. But once that fell out, if we had nothing else, well, then counsel is right. But we did have. We had a lot more in our petition. And we've summarized that in the tables. Once we have those arguments in the petition, the board is required under this court's case law to consider those arguments. And once it determined Campanella fell out, that was the end of the inquiry for the board. This court's case law requires the board to do more. A quick point on the board's discretion on our reply brief. What I didn't hear counsel say is the board went through a reply point by point by point. And they disagreed with us on this point. But nowhere did they say in their final written decision that because they found one thing new, that they were going to disregard everything else. There's a reference to that standard in there, but it really only applied to the small-com situation. But what Fraunhofer's asking this court to do is to upend this entire appeal, avoid the challenge claims being invalidated by having this court exercise the board's discretion for it. And we don't believe this court's case law follows that approach. If the board exercises discretion, well, that's a different issue. But we believe that's what Fraunhofer's asking this court to do. And as far as the last point I'll conclude with is with the case law that Fraunhofer cited, and counsel mentioned Hennepinney and some other cases. Each of those cases required new art, new citations, different arguments, different motivation arguments, something that was nowhere found in the petition, just something entirely new. We don't have that new here. And our table summarized that for this court and for the board. And the point I'll leave you with is this court's Phillips case says that the reply should be used to point the board to show where the evidence and argument are in the brief. We did that. The board ignored that because it necessarily found that once Campanella dropped out, nothing else mattered. And that was errors of matter of law, not only under Erickson, but certainly under Arioso, Randall, and the Phillips v. Google case. And as far as whether Campanella's prior art are not under 102E, we'll stand on no briefs for that point, Your Honors. Thank you. Both counsel, the case is submitted.